ROBERT COLLINS v. HIRAM R. HAZELTON.

*Master and servant—Contract of employment—Authority of foreman to discharge employe—Recovery of wages.*

Plaintiff sued defendant for wages during the latter part of an alleged yearly term, when, as he claims, he was unlawfully discharged. The Court, on a review of the case, reverse the judgment for plaintiff, holding—

1. That the yearly hiring is not satisfactorily made out.

2. The authority of an alleged foreman to discharge plaintiff is not shown.

Error to Macomb. (Stevens, J.)    Argued February 9, 1887.    Decided February 15, 1887.

Assumpsit. Defendant brings error. Reversed. The facts are stated in the opinion.

*T. M. Crocker,* for appellant.

*Eldridge & Spier,* for plaintiff.

CAMPBELL, C. J.    Plaintiff sued defendant for wages during the latter part of an alleged yearly term, when, as he claims, he was unlawfully dismissed from service.

Plaintiff was in the service of defendant prior to April, 1883, working by the day in his saw-mill. At that time, as he testifies, he hired for a year for $500, and the use of such wood from the mill as he needed. He does not state it as a rate for the days employed, but as a round sum. His present claim is that he was then employed for a second year in the same way, and was dismissed without cause on the first

of January, 1885. His demand is for wages from January 1, 1885, to April, 1885. In the suit before a justice he recovered $124.02 for his damages. Plaintiff's testimony does not show the exact date of his discharge, and the justice's judgment was apparently for the whole three months. In the circuit court the jury reduced the finding to $96.75, but upon what precise basis does not appear.

The defense relied upon a denial of both the annual employment and the dismissal, and upon a failure of plaintiff to do what he could to obtain work while so unemployed, and a failure to indicate a readiness or desire to work for defendant.

Plaintiff, in order to make out his case, testified first as to his employment. It is difficult to make out any such agreement as he relies on. He worked out his year to April, 1884, and up to that time made no approach to defendant concerning a second year's employment. He says that a few days after that defendant was in the mill, and he said to defendant that he would like to have an understanding to know if he was going to work in the same way, and that defendant did not make much reply, but does not say what that reply was. Some days thereafter he spoke to defendant on the road between his farm and the village, and says that defendant said:

"Well, he was paying me pretty big wages; it was really more than he could afford to pay. If he paid me as much wages, I ought to do the best I could."

Defendant denied making any arrangement for a definite time. By the accounts rendered and settled from month to month it appears that after April, 1884, he was not paid by the year or month, but was paid up to December at the rate of $1.60 for each actual day's work, which seldom covered all the current working days; in some months falling short a number of days, and in September being only seven and a half days. In the account settled November 29, 1884, it was

stated that a reduction of 10 per cent. on wages would be made from December 1, and this reduction was actually made in the December account, on which he received the balance, as he claims, without consenting to it as a full payment, but no claim is made in this suit for the deficit.   After April 1, 1885, he went back and was employed for a while, and received his wages regularly for such work as he then did, but refused to give a receipt in full.

The account of his discharge, as he gives it, is that about Christmas, Mr. June, the mill foreman, said that defendant wanted to make new arrangements about pay, and wanted to pay plaintiff two dollars a day when at work in the mill, and nine shillings (or $1.13) while at other work when there was no sawing.   Plaintiff objected, and said, in substance, that he preferred to finish his year without change.   He says at this time he consulted some attorney.   Subsequently, when plaintiff was at work, he says June came to him, and said: " Rob, Mr. Hazelton don't want you to work any more." Very little more was said, except he claims that he told June he would hold himself in readiness to work when wanted till the end of the year.   Upon cross-examination he put it in this way:

" He came to me and said: ' Robert, Mr. Hazelton don't want you to work any longer.'   Says he: ' You better see Hazelton; may be you can fix it up.'   He did not say ' wanted to see me,' and he did not direct me to go and see Hazelton. He said: ' Better go and see Hazelton; perhaps you can fix it up.' "

He denies saying he would see him in hell first, but does not remember his exact words.   But he testifies positively that he never went to see Hazelton, and never told him he was discharged, or that he was ready to work, and had no subsequent conversation with Hazelton until in May, after the year was up.

He was asked:

" Did you ever ask him for any pay for the time between

the first of January, 1885, and the first of April, 1885, previous to the conversation in May that you speak of?"

This was objected to and ruled out.

This was error. It appeared that pay had always been balanced monthly, although paid along as wanted, and was due, if at all, at the end of each month. A failure by plaintiff to present his claim at the usual time, or at any other time, cannot be regarded as without significance. Had he made such a demand, it would have called attention to his being out of work, as well as to his claim of employment, and would have given an opportunity to defendant to give him work, or offer it to him; and he could not have refused to go back under the contract, if it existed, without forfeiting his claim under it.

The other witnesses agree in saying that June told him Hazelton wanted to see him at the office, and plaintiff with an oath refused to go.

There was also undisputed testimony that in February, 1885, plaintiff had a surgical operation performed which confined him from work from February 25 to April 18, 1885.

Hazelton and June deny positively that June was authorized to dismiss plaintiff, and June and some other witnesses deny that plaintiff was dismissed at all.

Several assignments of error refer to parts of the charge in which the court left it to the jury to say whether or not Mr. June was authorized by his position as foreman to discharge plaintiff. We have not found in the testimony anything showing such authority, or that June asserted any such authority.

Plaintiff was employed by Mr. Hazelton, and does not show that he ever had any dealings with June about his employment, except as June represented what defendant had said or desired. There is no single instance sworn to where June attempted to act on his own responsibility. Both he and Hazelton swear positively he had no such authority. The

only testimony relied on is that of plaintiff, who at the close of his re-examination said this:

"June is foreman and filer there. If he wants a man, he hires him; if he don't want him, he discharges him. He directs the work here and there."

On recross-examination he said—

"He had no conversation with June before going to work by the year; that his conversation about hiring was with Hazelton. June in no way interfered as I know of. I was hired by Hazelton, and not by June."

Taking all of plaintiff's testimony together, we do not think it legally tended to show that he supposed, or had any right to suppose, that June was acting on his own responsibility.

He was bound to show actual authority from Hazelton for his discharge, or actual knowledge and approval of his discharge. Nothing of this kind appears. He was also bound to see that Hazelton had knowledge that he refused to acquiesce in his discharge, and that he proposed to hold himself ready at all times to resume his labor. The charges asked on this point were substantially correct, and should have been given directly or by equivalent instructions. A person who proposes to put an employer in the wrong must take sufficient pains to prevent any reasonable misapprehension of his pretensions.

The judgment must be reversed, and a new trial granted.

The other Justices concurred.