## CHAMBERLAIN v. LAKE SHORE & MICHIGAN SOUTHERN RAILWAY CO.

1. RAILROADS—RATE OF FARE—FRACTIONS.
   Under 2 Comp. Laws 1897, § 6234, subd. 9, establishing a rate of fare of 3 cents per mile for certain railroads, a company may lawfully charge only 19 cents for carrying a passenger 6.48 miles; the fraction over being less than one-half cent.

2. SAME—EJECTION OF PASSENGER—WILLFUL WRONG—EVIDENCE.
   In an action against a railroad company for ejecting a passenger from its train because of his refusal to pay a fare which had already been declared excessive in a suit brought by him against the company, and then pending on appeal,—the distance between the points being agreed upon, and the statute fixing the rate per mile which the company might lawfully charge,— it was not error to permit the records and files of the former suit to be introduced in evidence, they being proper to be considered by the jury, as bearing upon the willful nature of the wrong, in determining the damages to be awarded.

3. SAME—EXCESSIVE DAMAGES.
   Where a passenger was wrongfully ejected from a train in the presence of 30 to 35 passengers, and was compelled to walk 5 miles, $650 damages were not excessive.

4. TRIAL—MISCONDUCT OF COUNSEL.
   Where plaintiff's right to recover was clear, and the only question related to the amount of damages, the court refused to reverse an award which was reasonable in amount, because of intemperate and ill-chosen remarks in the argument of plaintiff's counsel.

Error to Monroe; Kinne, J. Submitted November 17, 1899. Decided December 21, 1899.

Case by William Y. Chamberlain against the Lake Shore & Michigan Southern Railway Company for the wrongful ejection of plaintiff from defendant's train. From a judgment for plaintiff on verdict directed by the court, defendant brings error. Affirmed.

*C. E. Weaver* (*George C. Greene* and *O. G. Getzen-Danner*, of counsel), for appellant.

*Willis Baldwin*, for appellee.

Long, J.   October 28, 1895, plaintiff was ejected from defendant's train between Flat Rock and Trenton for refusing to pay a fare of 25 cents. He tendered 19 cents fare, which was refused, and defendant's conductor ejected him.   He had been accustomed to travel over this line once a week or once in two weeks for a number of years, and had been compelled to pay 25 cents between these two points.   The distance between these places is somewhat in dispute; the plaintiff claiming that it is only 6.3 miles, while defendant claims it to be 6.48 miles.   On the trial, however, the time-table of the defendant was offered in evidence, from which it appears that the distance therein stated is 6.3 miles.   It is admitted that the defendant company has no right to charge more than 3 cents per mile. In either view of the case, however, the defendant had no right to charge 25 cents.   The utmost that could be charged, even upon the defendant's theory that the distance is 6.48 miles, would be 19 cents.   Calling the distance that number of miles, at 3 cents per mile would be 19.44 cents. The fraction over the 19 cents is less than one-half of 1 cent.   In *Zagelmeyer* v. *Railroad Co.*, 102 Mich. 214 (47 Am. St. Rep. 514), the statute fixing rates of railroad fare within this State (Act No. 202, Pub. Acts 1889; 3 How. Stat. § 3323, subd. 9) was under consideration, and it was said:

"This language would apparently not permit a charge for a fraction of a mile unless it was so large a fraction as to make the charge of 1 cent or more not in excess of 3 cents per mile.   The statute formerly provided that the price of tickets might, for convenience in making change, be fixed at that multiple of 5 which was nearest the exact amount of fare; but the present statute (Act No. 202, Pub. Acts 1889) contains no such provision."

The plaintiff in the present case had judgment for $650. Defendant brings error.

It appeared that in 1892 the defendant company had ejected the plaintiff because he had tendered 21 cents instead of 25 cents fare between these points, and that he brought an action based thereon. On that trial it was admitted that the distance was only 6.3 miles, and that distance only was shown by the time-table. In that case the plaintiff recovered a judgment for $400. The case was removed to this court, and was here affirmed at the October term, 1896 (110 Mich. 614). That case had resulted in a judgment against defendant in the circuit court before the present case was brought. On the present trial the plaintiff offered in evidence the files and records in the former suit. This was objected to by defendant's counsel, but the court overruled the objection and admitted such files and records. This is claimed to be error. We think there was no error in this. It appears that the plaintiff had continued to pay 25 cents fare for several years prior to the former suit. In that suit it was admitted that the distance was only 6.3 miles; yet after that suit had gone to judgment, and the defendant and its officers knew by the ruling in that case that 19 cents fare was the utmost limit it could charge, it continued to demand from its passengers 25 cents fare between these points. The wrong to the plaintiff was aggravated by these facts. In *Welch* v. *Ware*, 32 Mich. 84, it was said:

"When the law gives an action for willful wrongs, it does it on the ground that the injured person ought to receive pecuniary amends from the wrong-doer. It assumes that every such wrong brings damage upon the sufferer, and that the principal damage is mental, and not physical. And it assumes further that this is actual, and not metaphysical, damage, and deserves compensation. When this is once recognized, it is just as clear that the willfulness and wickedness of the act must constitute an important element in the computation, for the plain reason that we all feel our indignation excited in direct proportion with the malice of the offender, and that the wrong is aggravated by it."

See, also, *Warren* v. *Cole*, 15 Mich. 265; *Tefft* v. *Windsor*, 17 Mich. 486; *Brushaber* v. *Stegemann*, 22 Mich. 266; *Swift* v. *Applebone*, 23 Mich. 252; *Leonard* v. *Pope*, 27 Mich. 145.

Some claim is made that the damages are excessive. It appears that the plaintiff was ejected in the presence of 30 to 35 passengers, and was compelled to walk from that point to Trenton, a distance of about 5 miles. We think the circumstances of the ejection were such that the jury very properly gave him substantial damages. The court below properly guarded the rights of the defendant in this respect. He stated to the jury that "no damages can be allowed except such as have been established by the evidence in the case, and no damages should be allowed as a matter of punishment to the railroad company."

One other question is raised which we think proper to discuss. On the closing argument by counsel for plaintiff, he said, among other things:

"Little bits of outrages, perpetrated upon one man at a time,—a cent here, half a cent there. If a man pays 5 cents more than he ought in traveling a little piece of the road, and another man pays 10 cents more than he ought for freight, it amounts to a good deal in a year. It amounts to very little between Flat Rock and Trenton, says some one; but in 25 years how much would it amount to? The regular fare is 19 cents. They have taken 25 cents from Flat Rock to Trenton for 25 years. That amounts to $5,470 that has gone into the pockets of the Lake Shore & Michigan Southern Railway Company between these two little points. Just imagine the work the farmers did along there to earn that amount. How many hours of hard work has it taken for these men to earn that? I call your attention to that because he called your attention to those things. I am calling it to your attention so that it can go into your mind and heart, and mine, and that of every man who has thought of the thing, that the little outrages from year to year gradually become all centered upon some one man, until he is so much outraged that he takes it into his hands and tries to correct the outrage against all the people. For 25 years, between Flat Rock and Trenton, the people had

been outraged to the extent, and had been stung, and this old man had been, he had felt it, not only by the outrage to himself, but to his neighbors. He felt the outrage that was going on, but he stood it a long time, as the other people had stood it; and why? Why, that the railroad company's lawyers— And, by the way, during the last year, according to the report of this old road— As people grow old, they ought not to have lawsuits. As railroads grow old, they ought not to have lawsuits, unless for such things as Mr. Weaver and his associates have had in cases like this. According to the report, there has been a large amount of expense for lawsuits, etc.,—$63,024.45. That is taken from somebody. Every bit of it has been taken from the people of the State of Michigan, or other parts where this railroad goes; and still Mr. Weaver would laugh at you. Mr. Weaver would laugh at you and say: 'What do you care about it? You walk about your yard,—a great, big man.' It does not cost much to make a common, ordinary devil walk 5 or 6 miles; but if the president of your railroad, Mr. Vanderbilt, who said, 'The public be damned,' had been asked to walk 5 or 6 miles, would Mr. Weaver say it was worth only five, or six, or ten, or one hundred dollars? Why, it would mount into the millions. He would not want a man of that kind to be put off, and walk from Flat Rock to Trenton, for a few paltry dollars. But it is Mr. Chamberlain, an ordinary farmer, used to walking around the fields. I have walked around the fields, and I know it is no fun. Farmers do not have fun walking around the fields for earning their dollars."

While some of these remarks were made in answer to the arguments of counsel for defendant, yet many others of them were not, and counsel spoke of many things outside the record. This practice of counsel has many times been condemned by this court, and the language here is deserving of the severest censure. The court below should have interposed and stopped the intemperate speech. But we are not satisfied that any substantial injury was done the defendant. The amount of the verdict is not large, when we consider the aggravated circumstances under which the plaintiff was ejected; and we are not, therefore, inclined to reverse the case because of these intemperate

and ill-chosen remarks of counsel. The plaintiff was clearly entitled to recovery, and the only question was the amount of damages.

We find no substantial error in the case. The judgment must be affirmed.

The other Justices concurred.