CLARK *v.* ONAWAY-ALPENA TELEPHONE CO.

1. CORPORATIONS—OFFICERS—COMPENSATION—QUESTION FOR JURY.
   In an action by an officer of a corporation to recover for services as general manager under a written contract, where it appeared that, after a change of officers in the corporation, a resolution was passed that plaintiff be employed as general manager and as secretary at a sum less than his former salary; that defendant's officers were unaware of the existence of the contract, and that plaintiff received the salary provided by the resolution, *held*, that the court should at least have called the jury's attention to the undisputed dealings between the parties and the conduct of the plaintiff subsequent to such resolution, and not confined the ·deliberations of the jury to the mere question whether plaintiff had expressly agreed to come under that resolution.

2. SAME—CONTRACTS—SERVICES—NEW TRIAL.
   In an action by an officer of a corporation to recover an amount for services alleged to be due under a written contract, *held*, that a sufficient showing had been made to warrant the granting of a new trial.

3. SAME—EVIDENCE.
   Evidence *held* insufficient to sustain a verdict in favor of

plaintiff officer for services under the contract with defendant corporation.

4. APPEAL AND ERROR—NEW TRIAL—SCOPE OF REVIEW—WRITTEN FINDINGS—MOTIONS—DENIAL OF.

Where a party moving for a new trial files a request that in case of denial of the motion the court file its reasons for denying the same in writing, but findings are not filed by the court, and exception to the denial of the motion is duly filed, error may be assigned upon such refusal, regardless of the absence of such findings.

Error to Alpena; Emerick, J. Submitted January 22, 1917. (Docket No. 127.) Decided May 31, 1917.

Assumpsit by John M. Clark against the Onaway-Alpena Telephone Company for services rendered. Judgment for plaintiff. Defendant brings error. Reversed.

*Henry & Henry,* for appellant.

*I. S. Canfield,* for appellee.

STONE, J. This is an action to recover an amount claimed to be due plaintiff for services as general manager of the defendant under a written contract hereinafter set forth. The plaintiff, his wife, A. S. Clark, and Morris T. Streeter were the organizers of the defendant company in October, 1911, and they comprised all of the stockholders, and were elected the directors at the first meeting, and thereafter made the plaintiff president of the company. The same directors continued in office until the election of a new directorate in September, 1913, except that in December, 1912, Mrs. Clark resigned, and this vacancy was filled by a qualifying shareholder, F. M. B. White, and the minutes of the directors' meeting of January 21, 1913, show that the plaintiff, Morris T. Streeter, and said White (all of the directors at that time) were

appointed an executive committee to employ a general manager at a salary of not more than $400 a month, whose duties should be to have general charge and supervision of the business and property of the company, and who should perform such work and have charge of such affairs pertaining to such company and its property as the executive committee and directors of such company should determine. It was provided that such executive committee should have power and authority to enter into a written contract with such general manager for such length of time as they should deem expedient for the welfare of the company, and it provided that a majority of such executive committee should have power to act. The plaintiff, F. M. B. White, and M. T. Streeter were appointed such executive committee. At a directors' meeting held February 24, 1913, at which the plaintiff and F. M. B. White only were present, the executive committee was directed to make a contract for the employment of a general manager, "when a satisfactory person for this position shall be found." Thereafter, and on April 1, 1913, the executive committee, for the defendant, and the plaintiff, entered into the following contract:

"This memorandum of agreement, made and entered into this 1st day of April, 1913, by and between the Onaway-Alpena Telephone Company, a corporation, with its principal office at Alpena, Mich. (by a majority of its executive committee duly authorized), party of the first part, and J. M. Clark, of Alpena, Mich., party of the second part, witnesseth as follows:

"I. For and in consideration of the payments and agreements hereinafter contained, the party of the second part hereby agrees to continue and remain the general manager of the party of the first part, and as such general manager do and perform such duties and services as he shall deem expedient and essential, and as shall be required of him by the directors and executive committee of the party of the first part, in

connection with said corporation, and the running, operating, and handling of the business and property of the party of the first part.

"II. Said second party shall have general authority and supervision of the executive and business department of said corporation, also general authority and supervision over the operative and constructive departments of said corporation, and shall in all things have authority and supervision over the conduct of the affairs of said corporation, wheresoever the same shall be carried on.

"III. Said second party, to the best of his ability, shall see to it that accurate and suitable records are kept of all the finances incident to said business, which records shall show at all times the property of the corporation and its financial standing. Suitable books shall be kept, in which shall be entered an accurate record of affairs of such corporation.

"IV. Said second party shall have authority to employ and discharge any and all help and employees, and shall determine what employees shall be engaged, and the amount they shall receive for their services. At any time second party shall deem expedient, he shall be and is hereby authorized and empowered to employ a suitable engineer, a suitable purchasing agent, and a good and competent bookkeeper for such time and at such wages as he may deem for the best interests of the company; also competent attorney or attorneys. They shall be under the supervision of the said party of the second part.

"V. For and in consideration of the employment herein designated, said party of the first part shall pay said party of the second part two hundred ($200) dollars per month (payable monthly on the 5th day of the month succeeding the month for which payment is made), and in addition thereto such amounts as said second party shall be required to spend and disburse in and about the performance of his duties as general manager of such corporation, and in addition thereto the further compensation of 50 per cent. of the actual increase in net earnings of the company's properties for the year beginning April 1, 1913, up to, but not exceeding, twelve hundred ($1,200) dollars for the first year of this contract. The second year of

this contract the first party hereby agrees to pay a straight salary of ($300) dollars per month, and necessary expenses.

"VI. For and in consideration of the agreements and provisions herein contained, said party of the second part is hereby employed for a period of two years, from and after the date of this contract; and unless within sixty (60) days prior to the expiration of such employment, written notice shall be given by either party hereto of the termination of this contract, such contract shall renew itself from year to year thereafter, without further agreement between the parties thereto, and at the same salary as for the second year of this contract.

"VII. This memorandum of agreement is declared binding upon the representatives, successsors, and assigns of the parties hereto.

"VIII. This memorandum of agreement is made in pursuance of the authority vested in the executive committee of said corporation, by its directors, at a regular meeting of such directors.

"In witness whereof, the parties hereto have hereunto set their hands this 1st day of April, A. D. 1913.
                "ONAWAY-ALPENA TELEPHONE CO.,
                        "Per F. M. B. WHITE, Sec.
                        "J. M. CLARK,
                        "F. M. B. WHITE,
                        "M. T. STREETER,
                        "Executive Committee,
                        "Party of the First Part.
"J. M. CLARK,
        "Party of the Second Part.
"In presence of:
"R. B. MILES.
"FLORENCE G. SHAW."

After the making of this contract the plaintiff claims to have operated under it for the defendant. The annual meeting of the stockholders of July 15, 1913, was adjourned to be held in Jackson, July 22, 1913. At this meeting Charles S. Davis, John W. Allen, and Charles S. Ruthruff were elected directors, and the board was increased from three to five di-

rectors. This meeting was adjourned to September 3, 1913, when Charles R. Henry and plaintiff were also made directors. The directors met on September 27th and elected Mr. Davis president. The plaintiff was declared to have been elected secretary on October 25, 1913. At this meeting the following resolutions appear as carried in this meeting:

"Moved by Mr. Ruthruff, supported by Mr. Allen, that John M. Clark be employed as general manager of what may be called the physical side of the activities of this corporation, which by this resolution is understood to be the exchanges, lines, and telephones, and all accessories and mechanical appliances pertaining to them, and to the physical and mechanical side of the business of this company's entire property, and that for his personal time and service as such general manager he be paid the sum of $108.33 1-3 per month, to be paid monthly, such compensation and service as general manager to continue during the pleasure of this board, and that in addition to the above compensation the said John M. Clark shall be paid five hundred dollars per year for his services as secretary. Carried.

"Under authority conferred by article II, section 6, and section 8, of the by-laws, it was moved by Mr. Allen, supported by Mr. Ruthruff, that the duties of the president be extended, beyond and in addition to the duties specified in article IV, section 1, of the by-laws, to include the personal management of what may be termed the commercial and business side of this corporation, and also to include personal oversight and authority over all the employees of this corporation, except where such oversight may be delegated by him to others, and that he receive for such extra personal time and service the sum of $175 per month, payable monthly, such extra time and service and compensation to continue during the pleasure of this board. Carried."

The above minutes were signed by Mr. Davis as president, and by the plaintiff as secretary. The plaintiff did not vote in favor of these resolutions,

and did not dissent; in other words, he did not vote at all.

Upon the trial of the case what was done under the last quoted resolutions was a disputed question. The plaintiff denied that he had made thereby another contract with the defendant at that meeting. He testified that at that meeting he agreed to accept compensation from defendant as general manager under certain conditions; that he came back with a counter proposition of $108.33 1/3 a month, provided he could have a written contract for one year. Mr. Davis, the president, testified that it was suggested to the plaintiff that he be offered compensation at the rate of $1,000 a year to take charge of the physical side of the telephone property. He was to have, in addition to that, $500 a year for acting as secretary, making a total of $1,500 per year; that the proposition was made to Mr. Clark by means of the foregoing resolutions; that Mr. Clark refused to accept it; that thereupon Mr. Davis stated to plaintiff that, unless he accepted under those conditions, that he was to serve during the pleasure of the board, that he would not be retained in any capacity as an employee of the telephone company; that he stated to plaintiff that there had been increasing dissatisfaction with his management; that the stockholders were not sure that he should be in their employ, but that they were willing to give him an abundant chance to prove that he could make good. Mr. Davis further testified that the plaintiff stated then that, if the directors would agree to give him $300 more, making his total salary at the rate of $1,800, he would accept, and that the directors were willing to do that, and it was done; and that they put in the resolution $108.33 1/3 a month, which came to $1,300, and that, with the $500 a year for his secretary services, made plaintiff $1,800 a year.

It is the claim of the defendant that at this time the directors and officers of the company, except the plaintiff, did not have any knowledge of the contract of April 1, 1913. The plaintiff testified that he did not at this meeting in any way notify the other directors of this contract of April 1, 1913, and that he did not know whether at that time they knew anything about it. He testified that, after said first contract was signed, it had been in the safe in the office of the telephone company—a part of the time in his private safe—and that he at no time called their attention to this April 1st contract. Mr. Davis, the president, testified that he had no knowledge whatever on October 25th of said April 1st contract. The plaintiff testified that after the meeting of October 25th he thanked the directors for having passed the resolution and for the confidence they had shown him in passing it. The pay rolls and checks from April 15, 1913, were offered by the defendant and were received in evidence. There originally appeared upon the checks, on the reverse side thereof, the following: "Pay roll check in full of account for all services rendered to and including" the date. Certain of these printed words had been scratched out in ink and the word "on" inserted, so that the pay roll check read "on account" J. M. Clark. On the cross-examination of the plaintiff the following occurred:

"*Q.* Mr. Clark, beginning with about November 15, 1913, these checks were signed by Mr. Green, were they?

"*A.* Some time along there; I don't remember that date.

"*Q.* It was about that time?

"*A.* Yes, sir.

"*Q.* And the checks were delivered by Mr. Green to you, were they not?

"*A.* No, sir.

"*Q.* From whom were these received by you?

"*A.* Mr. White usually handed them to me.

"*Q*. Is it not a fact that at the time you received the checks the stamp on the reverse side of the check was not scratched out?

"*A*. Most of them.

"*Q*. Sir?

"*A*. Most of them.

"*Q*. And whatever marking was done on the reverse side of the check was done at the time you indorsed the check, was it not?

"*A*. Done when I received the check, usually.

"*Q*. You accepted the checks without any marking by any one on the back, other than the stamp?

"*A*. Most of them."

At this time Mr. White was not a director or officer of the company. Immediately following this was the redirect examination of the plaintiff, in which the following occurred:

"*By Mr. Canfield: Q*. I notice these checks that have stricken out the stamp that is on the back of them, Mr. White said he did some of them—yesterday in his testimony—and some you did; now what was that for?

"*A*. Because I did not consider the check payment in full.

"*Q*. I will ask you if you told any person that handed you the check that you would not receive it in full?

"*A*. I did."

There was testimony by Mr. Green that the plaintiff had requested him, before he went to Jackson, not to mention the contract of April 1st to Mr. Davis and Mr. Ruthruff, whom he went to see, and that he did not mention it to them. The plaintiff, upon the trial, claimed to be at all times performing services under the contract of April 1, 1913, and the instant suit to recover for his services was brought upon that contract. He claimed such services to have been under that contract from its date until February 24, 1914, when he was discharged by the defendant.

Much testimony was taken upon the trial upon the part of the defendant tending to show that the discharge of the plaintiff was justified, because of certain claimed irregularities on the part of said plaintiff. The plaintiff testified that his claim in the case was $4,158. The jury, allowing some interest, returned a verdict for the plaintiff for $4,233.94, upon which judgment was entered. The defendant thereafter moved for a new trial, which motion was denied by the court, and exception thereto taken by the defendant. The defendant has brought the case to this court upon writ of error, and under an appropriate exception to a part of the charge of the court it is its contention that the court erred in not submitting to the jury the effect of the plaintiff's conduct and actions after the meeting of October 25, 1913.

It is urged that the court charged that if plaintiff positively agreed at this meeting to accept the different compensation he could not recover; but it is said that plaintiff's silence or acquiescence, his concealment of his contract of April 1st, and his actions subsequent to October 25th were not in any form submitted to the jury. It is conceded that whether plaintiff agreed to accept the new compensation was in dispute; but it is said that he admits that he would have accepted this lower salary under certain conditions, and that he in no way notified them of the April contract, and that he did not know whether the other directors knew of the April contract. While he did not vote upon the resolution, he signed the minutes of this meeting as secretary; and later the minutes of the meeting at which these minutes were approved. It is claimed by appellant that the pay rolls and checks show that the plaintiff assumed to work under the arrangement of October 25th. The witness Green, who it is claimed signed all the checks of the company at that time, testified that at the time they were signed

there were no erasures or scratching out on the backs of the checks. The pay rolls of December 15th, December 31st, January 15th, and January 31st are the same; they show plaintiff was paid on the basis of $150 per month, and the checks are in each case $75 in amount. All are signed by Green and indorsed by the plaintiff. Upon this subject the court charged the jury as follows:

"I charge you as a matter of law that if, upon this occasion, the meeting of the board of directors of October 25, 1913, Mr. Clark knowing that the other members of the board of directors had no knowledge of his contract of April 1, 1913, and that Mr. Clark concealed from them its existence, and then agreed to remain as general manager at the compensation of $1,800 per year, and no fixed term of employment, if he did that for the purpose of continuing in the employ of the company, or if he did it to further any purpose of his own, for any reason that he had, if he made the agreement with them positively that he would remain for that sum, he cannot recover now. * * * That ought to be the law, and it is the law. * * * If he positively agreed to accept this reduced compensation and continue the duties without any fixed term, he would not have any standing in this case. * * * Now, how will you determine that issue? Why, from the testimony of the parties, the testimony of the witnesses, their actions at the time, their subsequent actions, and everything in this case which you think bears upon that issue. It is an issue distinct by itself."

Upon this subject counsel for appellant say:

"In other words, the court said to the jury: 'You shall find whether or not, on this 25th day of October, 1913, at the meeting of the board of directors, there was a positive agreement made between Clark and the company.' He practically says that the fact that Clark continued working for the company, presumably under the arrangement of October 25th, that Clark acquiesced in this new arrangement, and that all acts on the

part of Clark subsequent to that date had no bearing upon the case and were not for their consideration. The court emphasized the necessity of finding that the agreement was entered into on October 25th, and repeatedly charged them that, to find the defendant not liable, they must find a *positive agreement* on this day."

Counsel for defendant had requested the court to charge the jury as follows:

"On the 25th day of October, 1913, at a regular meeting of the board of directors of the defendant, at which plaintiff was present, as director, a resolution or motion was passed or adopted whereby the plaintiff was to receive a certain amount for his services as general manager of the defendant company and a certain amount for services as secretary of said company; at the time of the passage of this motion none of the directors then present knew that the plaintiff had before then entered into any written contract with the defendant for any kind of services for said defendant. The plaintiff continued thereafter to do whatever he did do for the defendant company under said resolution or motion, so far as any evidence in this case shows, or so far as any record shows, until the 24th of February, 1914, when he was discharged. By the adoption of this motion or resolution, by the conduct of the plaintiff on and after the 25th day of October, 1913, I charge you as a matter of law that any prior contract which the plaintiff may have had with the defendant relative to work as general manager or otherwise on behalf of said company was waived, and the plaintiff cannot recover upon the contract sued upon in this cause."

This request was refused. Upon this point it is urged by appellant that the plaintiff not only remained silent when he ought to have spoken, but there was testimony upon which it can be said he actually did things ratifying the new arrangement, and it is the claim of appellant that the court should have at least submitted these facts to the jury to say whether the plaintiff so acted as to make the new arrangement

effectual, and should have charged them that if they so found plaintiff could not recover; and it is urged that, on the contrary, the whole charge on this point was confined to a direction that, if they found *an agreement to have been made on October 25th,* the defendant was not to be held liable, but that the jury was not sufficiently permitted to consider in that connection the plaintiff's acts and conduct subsequent to October 25th. The following cases are cited in support of appellant's position: *Spicer* v. *Earl,* 41 Mich. 191 (1 N. W. 923, 32 Am. Rep. 152) ; *Collins* v. *Hazelton,* 65 Mich. 220 (31 N. W. 843) ; *Bartlett* v. *Railway Co.,* 82 Mich. 658 (46 N. W. 1034) ; *Brighton* v. *Railway Co.,* 103 Mich. 420 (61 N. W. 550) ; *Davis* v. *Boat Works,* 121 Mich. 261 (80 N. W. 38) ; *Lachine* v. *Railway Co.,* 126 Mich. 519 (85 N. W. 1102) ; 26 Cyc. p. 1039; 1 C. J. p. 564; *Shade* v. *Lumber Co.,* 115 Cal. 357 (47 Pac. 135).

A careful examination of the record upon this subject has led us to the conclusion that, after refusing said request to charge, the court should have at least more specifically called the attention of the jury to the undisputed dealings between the parties and the conduct of the plaintiff subsequent to the resolution of October 25, 1913, and not have confined the deliberations of the jury to the mere question as to whether plaintiff had *expressly agreed* to come under that resolution. Had the attention of the jury been called to that subject, it is doubtful if they would have reached the conclusion which they did, for it is a close case upon the facts.

There was a motion for a new trial, entered by the defendant and submitted to the court, upon the grounds that the verdict was unreasonable and excessive, that it was against the weight of the evidence, that the court erred in charging the jury as indicated above, and in other respects, and upon the ground

of newly discovered evidence. The newly discovered evidence is fully set forth in the affidavit of the president of the defendant and of one Robert J. Crable, a public accountant. The affidavits seem to comply with the rule pertaining to newly discovered evidence, and that the same could not have been discovered by reasonable diligence prior to the trial of the case, and that the same had been developed and brought to light by the hearing in a certain chancery case of *Charles S. Davis* v. *John M. Clark,* which was subsequent to the trial of the instant case. Such evidence was to the effect that on October 30, 1911, Charles W. Swank was the owner of 90 shares of the stock of the defendant company; that on or about November 2, 1911, at a time when plaintiff was connected with said defendant in the capacity of president and manager, plaintiff issued the check of said company, No. 265, to himself for $2,000, and charged said amount on the books of said company to capital stock; that said check referred to the Swank stock; that said $2,000 was issued for the purpose of retiring said Swank stock, and that the said 90 shares of Swank stock, so called, came back into the treasury of the defendant company; that by said transaction said plaintiff used said sum of $2,000 from the treasury of said defendant with which to purchase and retire the said 90 shares of Swank stock, so called; that thereafter, and on or about January 11, 1912, said plaintiff caused 83 shares of the Swank stock, so called, out of the 90 shares of stock, to be reissued to himself personally; that so far as the books of said company show no consideration passed from said plaintiff to said company for said 83 shares of stock, and nothing was paid by the plaintiff to said company for said stock; that between January 11, 1912, and December 19, 1912, during which time plaintiff held said 83 shares of stock, for which he paid no consid-

eration, certain dividends were declared and paid by the defendant; that upon the declaration of said dividends said plaintiff received and took to himself dividends upon said 83 shares of stock, which he had reissued to himself; that on December 19, 1912, plaintiff sold about 83 shares of Swank stock, so called, which had been reissued to himself, to John W. Allen at par, and retained the proceeds thereof; and that the proceeds from the sale of said stock to said Allen has been retained by said plaintiff and never returned to said company. It is the claim of the defendant, supported by said affidavits, that the foregoing facts could not be ascertained prior to the trial of the instant case, but can now be proved, and that said facts fully justify said plaintiff's discharge.

In view of the entire record, we are impressed with the fact that there is merit in the claim of defendant regarding this newly discovered evidence, and, if there is truth in the claim in that regard, the judgment is not only excessive, but unjustified in any amount. We are also impressed with the claim that the verdict and judgment are against the weight of the evidence in the case. When the motion for a new trial was entered, a request was filed that, in case the motion was denied, the court should file in writing its reasons for denying the same. It further appears by the record that the motion for a new trial was on April 25, 1916, denied, to which defendant duly accepted, but no written reasons for denying the motion have ever been filed. It is the claim of the appellee that under our statute and practice the motion for a new trial and the denial thereof are not before us, because no reasons in writing for denying the same were filed. This precise question has not before arisen. It seems to us, however, that where the moving party has fully complied with the rule, and has filed a request for a written finding, and such written finding has not been

filed by the court, and exception to the denial of the motion has been duly filed, such moving party should not be required to apply to this court for a mandamus to compel the circuit judge to comply with the practice, but that error may be assigned upon the refusal, and we think we should so hold in this case. Error has been duly assigned here. Upon the showing here made, we think the defendant was entitled to an order setting aside the judgment and granting a new trial, and that it was reversible error to refuse the same. We find no other reversible error in the case.

For the reasons above stated, the judgment of the court below is reversed, and a new trial granted, with costs to the appellant.

KUHN, C. J., and OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.