CLARK v. DETROIT & MACKINAC RAILWAY CO.

1. WATERS AND WATERCOURSES — FLOODING LAND — NEGLIGENCE — QUESTION FOR JURY.

In an action for damages to plaintiff's crops, conflicting testimony as to the adequacy of a ditch and culvert to take care of water flowing across plaintiff's land, which defendant constructed to take the place of two culverts

See notes in 59 L. R. A. 892; 12 L. R. A. (N. S.) 267; 27 L. R. A. (N. S.) 168; 37 L. R. A. (N. S.) 976; 49 L. R. A. (N. S.) 415.

under its right of way, taken out by defendant, *held*, to present a question of fact for the jury.

2. APPEAL AND ERROR—REFRESHING MEMORY—IMPROPER USE OF MEMORANDUM—CURING ERROR.

Where plaintiff in testifying made use of a memorandum to refresh his recollection, upon the theory that he helped prepare it, and it later appeared that it was not the paper he helped prepare, withdrawal by the court of all testimony based upon said paper, *held*, not to leave the jury in doubt as to its duty in relation to such testimony.

3. WATERS AND WATERCOURSES—DAMAGES—CONJECTURE—EVIDENCE.

Verdict for $1,236.67 for plaintiff, where the question of damages was fairly submitted to the jury, and there was abundance of evidence to justify the verdict, *held*, not objectionable as conjectural and speculative.

4. APPEAL AND ERROR—NEW TRIAL—REASONS FOR REFUSAL—REVIEW.

Failure of the trial judge to file a fuller statement of his reasons for overruling the motion for a new trial, *held*, not reversible error; review of showing made for new trial disclosing that right conclusion was reached.

Error to Bay; Mayne, J., presiding. Submitted October 8, 1918. (Docket No. 9.) Decided December 27, 1918.

Case by George Clark against the Detroit & Mackinac Railway Company for damages to plaintiff's crops by flooding. Judgment for plaintiff. Defendant brings error. Affirmed.

*Henry, & Henry (James McNamara,* of counsel), for appellant.

*Gilbert W. Hand* and *W. A. Collins,* for appellee.

MOORE, J. Plaintiff brought this suit against the defendant for damages to his interests in certain crops on what is known as the Pelkey farm of 200 acres. The main line of the Detroit & Mackinac Rail-

way Company was· built across the farm, which is
and always has been low and comparatively level land.
In a .state of nature there was a creek running in
a northeasterly course and then in a northwesterly
course across this farm.    The defendant in order to
take care of the water which flowed through this creek
constructed at the time the railroad was built two
.culverts under the railroad track.    These culverts were
about 800 feet apart.    About 1909 the defendant took
out these culverts and dug a ditch along the west side
of its track to carry off the water.    It also put in a
new culvert in the place of the northerly one.    It is
the claim of the plaintiff that the northerly culvert
which was built of wood was at least three by five
feet in size, and that it was replaced by an iron pipe
only two feet in diameter, and that as a result of
these changes his crops were greatly damaged because
of an excess of water.

It is the claim of the defendant that after the
changes were made the water would flow away from
the crops of plaintiff as freely as before, and that
if they suffered from too much water it was because
the seasons were unusually wet and because the plain-
tiff did not keep his own ditches in condition so the
water could escape.

The case was bitterly contested.    The plaintiff swore
in his behalf 9 witnesses besides himself, one of whom
was an engineer, the others of whom were farmers
and all of whom testified to their personal observa-
tions of the farm.    The defendant swore on its behalf
14 witnesses, many of whom were engineers who tes-
tified as to measurements made by them.    The de-
fendant requested a directed verdict.    This was re-
fused.    The plaintiff sued to recover $8,630.    The jury
returned a verdict in his favor for $1,236.67.    A mo-
tion was made for a new trial, counsel claiming many
errors were committed and requested the court in case

it denied the motion to file his reasons in writing for so doing. The motion was overruled, the judge saying:

"In this cause the motion for a new trial is hereby denied. Under the testimony it is a question of fact whether the ditch along the defendant's right of way furnished as free an outlet for the water as did culvert No. 2 prior to its being closed by defendant."

A motion was made for further findings and the filing of additional reasons. This motion was overruled. The judge expressed himself as follows:

"In this cause, the court having stated the reasons for denying defendant's motion for a new trial as far as deemed necessary for a correct understanding, under the pleadings and evidence, of the action of the court, the request for additional reasons is hereby denied, and the reasons assigned in the original order denying the motion for a new trial are hereby repeated."

Exceptions were duly taken and the case is brought here by writ of error.

As there are upwards of 50 assignments of error, it is manifestly impossible to discuss each of them without making this opinion quite too long. It is urged strongly that the court should have directed a verdict. We quote from the brief of counsel:

"There is a decided distinction between expert testimony as to facts which can be determined to a moral certainty, and expert evidence incapable of definite determination. To illustrate: A physician may testify as an expert concerning the physical condition of a person, which goes no further than his opinion based upon his knowledge, education, experience and skill. While on the other hand a carpenter and joiner, or a civil engineer can testify to measurements and conditions which are not opinions, but are the results of correct calculations. * * *

"There was abundant evidence in the case that the land was not reasonably drained. There was no evidence in the case from start to finish indicating that

the draining facilities on defendant's right of way did not carry off reasonably all water that came to such right of way from the old creek which meandered over the land. Why conjecture and speculate respecting the inefficiency of the drains on the defendant's right of way.

"For the sake of argument, if we should assume that there was evidence in the case that the right of way drain was insufficient, where is the evidence indicating to what extent it was inefficient? Nor was there evidence that lack of drainage on the land didn't contribute to the damages.

"If by lack of proper ditches on the land nine-tenths of the damage accrued, and by lack of proper outlet on the right of way one-tenth of the damage accrued, how could a jury reasonably and fairly determine such facts on the evidence submitted?"

We think this contention overlooks the respective duties of the trial judge and the jury. While the defendant claimed the ditch built when the southerly culvert was filled was adequate to carry away the water, there was testimony that near the middle of the ditch it was 1.4 feet higher than at the ends and that it would not carry away the water as had been done previously. There was also testimony that the northerly culvert as reconstructed had only about one-fourth of the capacity of the old culvert and did not relieve the land of water as was done under the old conditions. The testimony was in sharp conflict and presented questions of fact for the jury.

Mr. Clark made use of a memorandum called Exhibit A. Mr. Clark used this paper to refresh his recollection for a time without objection, upon the theory that he helped prepare it. Later it turned out it was not the paper he helped prepare, and a motion was made in relation to its use. The trial judge charged the jury as to it in part:

"Considerable has been said concerning the testimony of plaintiff. When he appeared upon the wit-

ness stand in the first instance Mr. Clark made use of a paper from which to refresh his recollection, his memory. His statement and the use of this paper presented a question that later was referred to the court, presented a legal question, and the court admitted it or at least did not reject it, but allowed it to go to the jury. Later Mr. Clark came upon the witness stand and testified concerning this paper. Under his explanations made on his second appearance as a witness it became clearly apparent that the paper or memorandum from which he refreshed his recollection on his previous appearance was not such a paper as he was entitled to make use of, and all his testimony that you find in this case based upon that paper, that memorandum in writing, is withdrawn from your consideration. It was based largely upon statements and information made by one Pelkey, former owner of the premises who is since deceased. For that and other reasons the paper was not one with which any witness would be permitted to refresh his recollection. Later Mr. Clark appeared and gave testimony which he claimed to be on his own independent knowledge. He said he had reflected, thought the matter over, and that he remembered certain things independent of the former memorandum. Such testimony of Mr. Clark's as you find based upon his knowledge, upon his own memory and recollection, you are entitled to receive, and to give it such weight as you deem it worth. Any testimony of Mr. Clark or any other witness which is based upon statements made by Mr. Pelkey during his lifetime are withdrawn from your consideration * * * and all testimony based upon it, all testimony of any witness not within his own knowledge based on the testimony of Mr. Pelkey is withdrawn.

"The statements made by Mr. Clark and by other witnesses as upon their knowledge are to be received by you and given such weight as you deem it worthy of receiving; you are to accept or reject it as you consider it worthy of belief; if, however, in the first instance he stated his inability to testify as to those facts excepting as he refreshed his memory you should closely scan his testimony when he later appears on the witness stand and testified as to his own knowl-

edge; that is one of the things you should consider as causing you to question his actual knowledge.

"That is one of the things in the case that tends to raise the question of the credibility of a witness, and that he has wilfully possibly testified falsely, and as to whether he actually did know the facts concerning which he testified upon his second appearance. Now that is an issue in this case, and as I say, you have a right to believe his second statements or disbelieve them, as you consider he was actually possessed of the knowledge or not concerning which he testified."

The trial judge charged the jury more in detail in relation to this phase of the case and we do not think the jury was in doubt as to its duty in relation to this testimony.

The plaintiff's case did not depend entirely upon the testimony of Mr. Clark, but was established in its essentials by the testimony of other witnesses if the jury believed them.

The jury was instructed:

"All the duty that rested upon the defendant was to provide a means of escape for the water equal to the natural flow from these premises, and the damages if any must be upon the theory that they impounded or held back the water, and that the plaintiff suffered damages in excess of what he would have sustained by the overflowing of his lands if the water had not been impounded and held back. If there was too much water on the premises in question plaintiff would have suffered something to some extent. Now in what proportion has he suffered more than he would have suffered had culvert No. 2 been left as it was, he is entitled to recover damages. It is the excess damages that he has sustained or lost for which this action is brought. The water was there anyway, and the question is, Was it held there longer by reason of the act of defendant than it would have been otherwise? In other words, Did the closing of this culvert and the opening up of this ditch keep the water longer on plaintiff's premises than it would have been detained

there had the change not been made? If it did then defendant is liable for the damages which actually occurred to plaintiff on the west side of the railroad by reason of the changes which they made. The damages allowed could not exceed the value of the crops less the expense of harvesting them and marketing them.    *    *    *

"Plaintiff can only recover for the money which he would have had after he had harvested his crops and paid all the expenses of taking care of the marketing. The net profits are all that go to make up the damages, provided you find plaintiff entitled to recover.

"That covers the years 1910, 1911, and 1914 on the west side.

"The same law applies to the premises lying east of the right of way, but there is only one year there on the east side, and on the west side he was a tenant and only entitled to one-half the crops, only one-half of the entire crops; Mr. Pelkey owned one-half of the crops, and in this action it is not proper to recover anything for the Pelkey interest but merely the interest of the plaintiff himself.

"The plaintiff did own the land on the east side, and is entitled to recover for the entire loss sustained; if you find there is a liability on the part of the defendant the same law applies."

We have quoted only a portion of the charge upon this phase of the case, but the jury were told over and over again that unless the changes made damaged plaintiff's crops he could not recover, that if they did he could recover. The deciding questions were questions of fact about which the testimony was in conflict. These questions were fairly submitted.

It is said that upon the question of damages the testimony offered on the part of the plaintiff is so conjectural and speculative as not to offer a basis for an intelligent verdict, counsel citing *Patrick* v. *Howard*, 47 Mich. 40, and *People* v. *Thompson*, 122 Mich. 430. An examination of the opinions in the cases cited show them easily distinguishable from the instant case. The witnesses in this case testified to the ca-

pacity of the land to grow crops before the change, and to its diminished capacity after the change, going into details as to what they had observed. The case is more like *Grand Rapids Booming Co.* v. *Jarvis,* 30 Mich. 308, and *Witheral* v. *Booming Co.,* 68 Mich. 48. There was abundance of evidence, if believed, to justify the verdict.

One other question calls for discussion, and that is the claim that the failure of the trial judge to file a fuller statement of his reasons for overruling the motion for a new trial is reversible error. A similar situation is disclosed in the case of *Clark* v. *Telephone Co.,* 196 Mich. 168. In that case it was held the moving party should not lose the right to assign error because the trial judge failed to file his reasons in writing. In that case it was held upon the showing made that an order granting a new trial should have been granted, and the case was reversed. In this case we have examined with care the showing made for a new trial and agree with the trial judge that none should have been granted.

Judgment is affirmed, with costs to the plaintiff.

OSTRANDER, C. J., and BIRD, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.